DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant, Daniel L. Strickland, appeals from his conviction for robbery in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On July 12, 2005, Defendant was indicted on one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), for robbing his former boss in the parking lot of his former employer, the Red Roof Inn on Arlington Road in Akron, Ohio. On October 18, 2005, a Summit County jury convicted Defendant and on October 19, 2005, the trial court sentenced Defendant to four years imprisonment. Defendant timely appealed his conviction, raising two assignments of error for review.
 Assignment of Error I "[Defendant's] convictions were based upon insufficient evidence and against the manifest weight of the evidence. The trial court erred by denying [Defendant's] Crim. R. 29 motions."
 {¶ 3} Defendant asserts that the evidence that led to his conviction was insufficient and that his conviction was not supported by the weight of the evidence. He asserts that he was wrongly identified by the victim and that he had an alibi for the date and time of the crime.
 {¶ 4} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 5} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390,678 N.E.2d 541 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 6} Therefore, we will address Defendant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency.
 {¶ 7} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 8} Defendant was convicted of one count of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides that "(A) No person, in attempting or committing a theft offense, * * * shall do any of the following: (1) [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 9} The State presented five witnesses including the victim: Nadine Nadudvari, Richard W. Zirker, Erin M. Hardy, Detective Carl Blasdel and Pauline Ellis. Defendant was the only witness who testified on his behalf
Nadine Nadudvari
 {¶ 10} Ms. Nadudvari was the victim in this case. She testified that on the morning of May 2, 2005, she arrived at the Red Roof Inn sometime before 10:00 a.m., seeing Defendant in his familiar fur collared coat in the parking lot on her way into the building. She conducted some business and then left the hotel sometime around 10:15 a.m. to take the weekend's deposit to the bank. She was unsure as to exactly what time she arrived at work or how long she was there before she left for the bank. While on the way to her car with the deposit bag in her hand, Ms. Nadudvari testified that she was approached from behind by a man who called her by her nickname (DeeDee), told her he had a knife, pressed something hard against her side, and demanded the deposit bag. Ms. Nadudvari testified that she recognized the Defendant's voice, as he had been a former employee of the Red Roof Inn who she had hired and fired. She also told detectives that the person who robbed her was wearing latex gloves but that she could see the skin on his hands through those gloves as being those of a black man. Ms. Nadudvari handed over the deposit bag to the assailant, ran back into the hotel and called the police. She identified Defendant as her assailant to the police.
 {¶ 11} The next day, Ms. Nadudvari testified that the Defendant called her at work. She placed his call on speakerphone and allowed two other employees (Mr. Zirker and Ms. Hardy) to listen to the conversation. Ms. Nadudvari testified that Defendant asked her why she had sent the police to talk to him, apologized for scaring her, told her he needed money, and asked for his job back. Ms. Nadudvari indicated that she knew the caller was Defendant because Ms. Hardy, who had answered the incoming call, told her that Defendant had identified himself prior to asking to speak to Ms. Nadudvari.
 {¶ 12} Ms. Nadudvari also testified that she had told police that another suspect they were considering was not her assailant because he was a white man and the robber's hand was that of a black man.
Richard Zirker
 {¶ 13} Mr. Zirker was the maintenance man at the Red Roof Inn at the time of the robbery. He testified that he came into the office at the hotel while Defendant was on the speakerphone talking to Ms. Nadudvari on May 3, 2005. Mr. Zirker said he heard Defendant say that he liked the Red Roof Inn and Ms. Nadudvari and apologize for "doing that to Dee Dee." It was his impression that Defendant wanted his job back. He also testified that sometime before the robbery, Defendant came to the Red Roof Inn to pick up his personal property, including his coat. Mr. Zirker said that he watched Defendant pack up his belongings and escorted him off the property. Mr. Zirker was unsure of the date that this occurred.
Erin Hardy
 {¶ 14} Ms. Hardy was the front desk supervisor at the Red Roof Inn on the date of the crime. She was working on May 2nd and May 3rd, 2005. Hardy testified that Ms. Nadudvari came to work during the morning of May 2, 2005, and then left to take a deposit to the bank. Shortly thereafter, Ms. Nadudvari ran back into the hotel and told her to call 9-1-1 because she had been robbed. Ms. Nadudvari was upset, frantic and scared. Ms. Hardy also testified that she was present during Defendant's call to Ms. Nadudvari on May 3, 2005. She answered the phone and recognized Mr. Strickland's voice because they had worked together. She also asked Defendant to identify himself, which he did. She then put the call through to Ms. Nadudvari, who asked her to listen to the conversation on speakerphone. She heard Defendant ask why the police wanted to talk to him. Defendant also stated: "I never meant to hurt you and I didn't mean to lose it." Defendant also indicated how much he liked the hotel and its employees, asked for his job back and stated that he needed money to pay his rent.
Detective Blasdel
 {¶ 15} Detective Blasdel investigated the robbery at the Red Roof Inn. He testified that after Ms. Nadudvari identified her assailant to the responding officer on May 2, 2005, he called Defendant on his cell phone on May 3, 2005, and asked to speak to him. Defendant initially agreed to speak with him but later told him that his lawyer (Bob Meeker) advised against it until Mr. Meeker was available to attend the meeting. On May 4, 2005, Mr. Blasdel met with the Defendant and Mr. Meeker. Defendant denied committing the crime and told the detective that he had been at the county welfare department when the crime occurred at 10:15 a.m. on May 2, 2005. He did not indicate he had been anywhere else beside the county welfare department on May 2, 2005. The Defendant also told the detective that he did not have a car and that he relied upon public transportation (the Metro) to take him where he needed to go. The detective drove the route between the welfare department and the Red Roof Inn in the curbside lane and testified that it took him 18 minutes to drive the 7 mile route. The Defendant told the detective that he owned a small knife and that he had last been at the Red Roof Inn on March 25, 2005, to pick up his personal belongings, which were given to him by Mr. Zirker.
 {¶ 16} Detective Blasdel testified that he also investigated another suspect who had admitted to a robbery of a Red Roof Inn, but that after looking at a picture of the suspect, the victim told him that this suspect was not her assailant. Finally, Detective Blasdel acknowledged that he initially doubted Ms. Nadudvari's story but that suspicion went away as he investigated the crime.
Pauline Ellis
 {¶ 17} Pauline Ellis is employed by the Ohio Department of Job 
Family Services. She testified that she met with the Defendant on the morning of May 2, 2005. The welfare department's records indicate that the Defendant arrived at 8:58 a.m. and Ms. Ellis dictated the results of her meeting with Defendant at 9:20 a.m., immediately after the meeting.
Defendant Strickland
 {¶ 18} The Defendant testified that although he initially provided his counsel with a list of possible places he had been the morning of May 2, 2005, he now knew that he had arrived at the welfare department at 9:00 a.m., because he had received a letter from the welfare department requiring him to be there at that date and time. He was at the welfare department until approximately 9:25 a.m. after which he waited for a bus that he took to Action Custom Tire and Rim where he worked for about an hour and a half and then went home.
 {¶ 19} The Defendant testified that he called Ms. Nadudvari on May 3, 2005, after Detective Blasdel informed him of the robbery and that Ms. Nadudvari had identified him as a suspect. Defendant indicated that he told Ms. Nadudvari that he was sorry that she had been robbed and that he asked her for his job back. He denied apologizing for harming her or telling her he needed money for rent because he was not paying rent at that time. He finally indicated on direct examination that he never got his personal belongings back from the Red Roof Inn because they were gone when he went to get them.
 {¶ 20} On cross-examination, Defendant testified to the following facts: (1) he owned a pocket knife a long time ago; (2) he had previously been convicted of a misdemeanor and felony theft crime; (3) he does not know the last name of his employer at Action Custom Tire and Rim; and (4) he is aware that the notice of alibi indicated other places he might have been on May 2, 2005, and does not list Action Custom Tire and Rim.
 {¶ 21} Defendant contends that the State failed to present sufficient evidence that he robbed Ms. Nadudvari. Upon thorough review of the record, we find that Defendant's convictions are supported by the manifest weight of the evidence. There was competent, credible evidence that Defendant was Ms. Nadudvari's assailant and that Defendant's alibi as to what he did that morning after he left the county welfare department was either false and/or it allowed him time to commit the crime. "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses. In this case the jury believed the victim's and the other state witnesses' testimony.
 {¶ 22} As this Court has disposed of Defendant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at *2. Necessarily included in this court's determination that the jury verdict was not against the manifest weight of the evidence, is a determination that the evidence was also sufficient to support the conviction. Id. Accordingly, Defendant's first assignment of error is overruled.
 Assignment of Error II "The prosecutor engaged in misconduct by calling [Defendant] a liar in closing arguments."
 {¶ 23} In his second assignment of error, Defendant argues that he was denied a fair trial due to prosecutorial misconduct because during closing argument, the prosecutor: (1) called Defendant a liar; (2) vouched for the credibility of state witnesses; (3) commented on the value of evidence; and (4) improperly instructed the jury as to the standard they need to apply to convict Defendant.
 {¶ 24} An appellate court generally will not consider as error any issue a party was aware of but failed to bring to the trial court's attention. Failure to object at the trial court level, when the issue is apparent at that time, generally constitutes a waiver of that issue, and therefore the issue need not be heard for the first time on appeal.State v. Awan (1986), 22 Ohio St.3d 120, 489 N.E.2d 277, syllabus; see, also, In re M.D. (1988), 38 Ohio St.3d 149, 150, 527 N.E.2d 286. Defense counsel made no objections during the prosecutor's closing arguments. Accordingly, we will not review Defendant's argument that he was denied a fair trial due to prosecutorial misconduct. Defendant's second assignment of error is overruled.
 {¶ 25} Both of Defendant's assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, P. J., BOYLE, J., CONCUR